# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,        )
                                        )
                                        )

          v.                   )     Case No.: 2003007159

JAMIE L. JONES,           )

      Defendant.        )

Submitted: October 14, 2021
Decided: December 6, 2021

Zach Rosen, Esq.
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Brian Rick, Esq.
Assistant Public Defender
900 N. King Street, 2nd Floor
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER

**Manning, J.**

## FACTUAL AND PROCEDURAL HISTORY

On March 12, 2020, Jamie L. Jones ("Defendant") was arrested by Trooper Adams of the Delaware State Police ("Adams") for the offense of Driving a Vehicle Under the Influence of Alcohol in violation of 21 *Del. C.* § 4177; Failure to Have Insurance Identification in Possession in violation of 21 *Del. C.* § 2118; Failure to Remain in Single Lane in violation of 21 *Del. C.* § 4122; and Failure to Signal in violation of 21 *Del. C.* § 4155(b).

Adams, the sole witness to offer testimony at the hearing, described the events surrounding Defendant's arrest as follows. Adams was on a routine patrol traveling eastbound on Ogletown Stanton Road when he came upon Defendant's vehicle, also traveling east in the right lane. Adams observed Defendant activate her right turn signal, change lanes into the right turn lane, and merge onto southbound Salem Church Road. As Defendant turned, Adams observed the right wheels of Defendant's car cross the white fog line and cross into the right shoulder of the roadway. Adams continued behind Defendant and observed Defendant's car cross the white fog line two more times—both times with the right tire and one of which lasted "approximately eight seconds." Defendant then quickly activated her left turn signal, moved into the left turn lane, and made a left hand turn into the Salem Village Square parking lot. Adams then activated his emergency lights and pulled over the vehicle.

After both vehicles pulled into the parking lot, Defendant swiftly exited the vehicle and approached Adams before Adams had the opportunity to call in the stop. Upon contact with Defendant, Adams noticed Defendant's erratic behavior and the odor of alcohol. Adams performed field sobriety tests and Defendant was ultimately placed under arrest.

On September 20, 2021, Defendant filed this Motion to Suppress ("Motion") all evidence. On October 14, 2021, the Court held a Suppression Hearing. At the hearing, the State presented the testimony of Adams and entered into evidence the motor vehicle video recording ("MVR") of the events leading up to, during, and after Defendant's traffic stop. Defendant did not present any testimony and did not enter any exhibits into evidence.

**PARTIES CONTENTIONS**

Here, it is undisputed that the circumstances subsequent to the initial traffic stop constituted sufficient probable cause to arrest Defendant. However, the parties differ as to whether Adams had reasonable articulable suspicion to initiate the traffic stop in the first place.

Defendant argues that to conduct a lawful traffic stop, there must be reasonable articulable suspicion that Defendant committed a traffic violation and, although Adams may have believed Defendant was not driving properly, there was no actual violation of Delaware's motor vehicle laws prior to the stop of Defendant's

3

vehicle. The State disagrees with Defendant's argument and believes there was reasonable articulable suspicion for Adams to conduct the traffic stop.

## LEGAL STANDARD

On a Motion to Suppress, the State bears the burden of establishing, by a preponderance of the evidence, that the challenged search or seizure was valid under the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[1] To justify a vehicle stop, the officer must be able to point to objective facts which would support reasonable articulable suspicion that the defendant had committed a criminal or traffic offense.[2]

## DISCUSSION

Adams testified to two actions as the basis of his decision to pull Defendant over: (1) several failures to maintain the lane in violation of §4122 and (2) a turn signal violation under §4155.

### 1. Failure to Maintain Lane

Adams testified that Defendant crossed the fog line "at least three times" and once for "approximately eight seconds." The State provided MVR footage which did confirm Adams' testimony as to the lane crossing but not for eight seconds in length.

---

[1] *State v. Anderson*, 2012 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

[2] *Id.*

4

Analysis of whether there is sufficient reasonable suspicion to support a traffic stop for violation of § 4122 is unique in that it inherently requires evaluation of the defendant's actions *before* deviating from the lane. A violation of § 4122 occurs only if a driver deviates from the lane without first ascertaining that it can be done safely. The significance of this condition precedent—safety—was well discussed in *State v. Blank*, in which the Delaware Superior Court found that § 4122 "concurs with the notion that changing lanes and crossing lane markings on a highway are only prohibited when the driver has neglected to ascertain whether such movement can be made with safety; the statute does not outright prohibit crossing lane lines (even if for no apparent reason)."[3] The Court in *Blank* explained that the trooper failed to establish reasonable suspicion because he did not demonstrate that the defendant's line-crossing was done without first ascertaining safety.[4]

Similarly, in *State v. Seaton*, the defendant was pulled over after the trooper observed defendant's vehicle turn on its right signal, drift approximately twelve inches into the left lane for two seconds and then immediately return into the right lane, making a right turn.[5] Upon review of the MVR, the Superior Court found that the defendant's conduct was not dangerous; he was not driving at an irregular speed

---

[3] *State v. Blank*, 2001 WL 755932, at *2 (Del. Super. June 26, 2001).

[4] *Id.*

[5] *State v. Seaton*, 2018 WL 656380, at *3 (Del. Super. Jan. 30, 2018).

5

or manner, there were no vehicles around besides the trooper's (who was at least three car lengths behind), and there was no issue in the way defendant made the right turn.[6] The Court found that the defendant's digression was minimal and did not constitute enough for reasonable suspicion.[7]

Here, I do not find that Adams had reasonable suspicion to conduct a traffic stop on a violation of § 4122 alone. Although Adams testified, as supported by the MVR, that Defendant crossed the Salem Church Road fog line a few times, he did not establish that Defendant did so without first ascertaining the safety of such maneuvers. Moreover, similar to *Seaton*, Defendant's tires only minimally crossed the fog long and for the briefest of moments. Defendant was driving down an empty, winding backroad and crossed onto the fog line a few times with just the right tire and only for a few seconds each time. The Superior Court has found examples of dangerous lane violations when a defendant made "sharp" course corrections without awareness of surroundings and almost colliding with another vehicle or when a defendant crossed a fog line twice and weaved within its lane of traffic—neither which were the case here.[8] Here, Defendant's digressions were minimal, not apparently unsafe, and did not warrant an emergency stop by Adams because there

---

[6] *Id.*

[7] *Id.*

[8] *Anderson*, 2010 WL 4056130, at *3; *State v. Mulholland*, 2013 WL 3131642, at *1 (Del. Com. Pl. June 14, 2013).

6

was not enough to amount to reasonable suspicion of violation of §4122.

## 2. Turn Signal Violation

Section 4155(b) differs considerably from § 4122 in that it does not require consideration of whether the act was done in a safe manner; rather, it prohibits turning without adequate signaling in all instances. Under 21 *Del. C.* § 4155(b), a person must signal his or her intention to make a turn for a least 300 feet before conducting the turn.

I find that Adams had reasonable suspicion to believe a violation of § 4155(b) had occurred. Adams testified that he observed Defendant make a left-hand turn without first signaling 300 feet in advance. Specifically, he testified that Defendant's vehicle activated its turn signal "quickly" and, in his assessment, no more than 75 feet before moving left into the left turn lane. Although no measurements were provided, my review of the MVR supports the officer's testimony. Based on the apparent speed of the vehicles in the MVR and the distance traveled between Defendant initiating her turn signal and moving into the left turn lane and then actually turning, sufficient reasonable suspicion existed for Adams to initiate a traffic stop for violation of § 4155(b).

7

## CONCLUSION

For the foregoing reasons, the Motion is DENIED, and the case shall proceed to Trial as scheduled.

**IT IS SO ORDERED.**

Bradley V. Manning,
Judge

8